UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNATHAN HOWARD KIGER,<br><br>Plaintiff,<br><br>v.<br><br>TRACY JOHNSON, et al.,<br><br>Defendants. | No. 2:23-cv-01263 DC SCR P<br><br><br><br>ORDER |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action under 42 U.S.C. § 1983. Plaintiff's third amended complaint ("TAC") is before the undersigned for screening. For the reasons set forth below, plaintiff's TAC fails to state any cognizable claims for relief. Plaintiff will be given one more opportunity to file an amended complaint and cure the deficiencies in his legal mail interference claims.

**STATUTORY SCREENING**

The court is required to screen complaints brought by prisoners seeking relief against "a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In performing this screening function, the court must dismiss any claim that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." Id. § 1915A(b). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325

1

1   (1989). The court may dismiss a claim as frivolous if it is based on an indisputably meritless
2   legal theory or factual contentions that are baseless. Neitzke, 490 U.S. at 327. The critical
3   inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and
4   factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989).

5   In order to avoid dismissal for failure to state a claim a complaint must contain more than
6   "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause
7   of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-557 (2007). In other words,
8   "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory
9   statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim upon which the
10  court can grant relief has facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial
11  plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable
12  inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. When
13  considering whether a complaint states a claim, the court must accept the allegations as true,
14  Erickson v. Pardus, 551 U.S. 89, 93-94 (2007), and construe the complaint in the light most
15  favorable to the plaintiff, Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

**FACTUAL ALLEGATIONS OF THE SAC**

17  The events underlying plaintiff's TAC occurred at Folsom State Prison. (ECF No. 1.)
18  The TAC names twenty-two total defendants: (1) Tracy Johnson, Warden; (2) Lt. O'Hagan; (3)
19  Lisa Tritt, Mailroom Office Assistant; (4) Almendrita Recio, Mailroom Office Assistant; (5)
20  Nathan Odbert, Mailroom Office Service Supervisor; (6) Cynthia Nygard, Mailroom Office
21  Technician; (7) Dan Thompson, Office Assistant; (8) Marquise Williams, Office Assistant; (9)
22  Beatriz Lee, Office Assistant; (10) E. Zamora, Correctional Officer; (11) C. Oldham, Correctional
23  Officer; and (12) John/Jane Does 12 through 22, unknown mail process delivery handlers.
24  Plaintiff alleges defendants violated his First, Fifth, and Fourteenth Amendment rights, and seeks
25  $600,000 for the injuries described below.

26   **I.   Mail and Access to the Courts**

27  The standard procedure for legal mail at Folsom State Prison involves logging legal mail
28  in to the inmate's legal mail log. (ECF No. 29 at 3.) Inmates then receive a ducat before

1  scheduled dinner chow release. (Id.) During chow release the inmate is responsible to pick up
2  his legal mail. The legal mail is then logged in the inmate's legal mail log as "received." (Id.)
3  Designated staff shall open the letter in the presence of the addressed inmate and inmates signed
4  for it at the time of delivery. (Id.)

5  On July 12, 2022, plaintiff's legal mail from the Appellate Defenders Inc. was delivered to
6  his housing cell opened, unsigned for, and without any confirmation that plaintiff lived there.
7  (ECF No. 29 at 3.) The legal mail was stamped "FSP MAILROOM RECEIVED JUL 06 2022
8  2:13 AM," indicating it was delivered six days after it was received. (Id.) The legal mail was not
9  documented in plaintiff's log. The legal mail was from plaintiff's attorney's office and need to be
10 filled out and sent back within a specific timeline. Plaintiff had to rush and immediately send it
11 back. (Id. at 3-4.) Plaintiff filed a grievance afterwards, #000000280088. (Id.)

12 On July 26, 2022, plaintiff's legal mail from the Alaska Innocence Project was delivered
13 to his housing cell opened and unsigned for. Plaintiff filed another grievance for this incident,
14 #000000296246. (ECF No. 29 at 4.) On August 29, 2022, plaintiff's legal mail from CDCR was
15 delivered to his housing cell opened and unsigned for. This mail was stamped "personal,
16 confidential and important information enclosed." (Id. at 4-5.) Plaintiff also grieved this issue,
17 #000000299705. Plaintiff alleges defendants Tritt, Recio, Odbert, Nygard, Thompson, Williams,
18 Lee, Zamora, Oldham, and Does 12-22 are responsible for the three unconstitutional mail access
19 violations. (Id.)

20    **II.    Right to Appeal and Retaliation**

21 Plaintiff alleges the State has created a regulatory "Right to Appeal" free of reprisals or
22 retaliation. (ECF No. 29 at 5.) Plaintiff filed three grievances regarding the legal mail issues
23 described above. (Id.) On November 7, 2022, plaintiff was called out of his cell and directed to
24 the Officer's Station. He was placed on a speaker phone call with defendant Lt. O'Hagan to
25 discuss grievance #000000296246. Because plaintiff had already submitted the grievance to the
26 Office of Appeals ("OOA"), he felt this was done as mere intimidation to stop him from pursuing
27 his grievance complaints. (Id. at 6.) On November 14, 2022, plaintiff received legal mail from
28 the OOA confirming receipt on his appeal. (Id.) On December 27, 2022, plaintiff received a

3

Memorandum Closing the grievance signed by defendant Johnson, the Folsom State Prison Warden. (Id.) Plaintiff alleges this violated his protected right to appeal.

### III.     Medical Privacy

Plaintiff alleges that the contents of the legal mail delivered open on August 29, 2022, contained medical information that CDCR is not authorized to access. (ECF No. 29 at 7.) Defendants' actions violated plaintiff's federally protected right to medical privacy under 42 U.S.C. § 1320-d et seq. (Id. at 7-8.)

### IV.     Professional Services and Neglect

Finally, plaintiff alleges that defendant Johnson, as the Folsom State Prison Warden, is responsible for the violations described above. (ECF No. 29 at 8.) Defendant Johnson had a duty to investigate the allegations and implement proper protections to ensure such violations do not happen again. (Id.)

## LEGAL STANDARDS

### I.     42 U.S.C. § 1983

A plaintiff may bring an action under 42 U.S.C. § 1983 to redress violations of "rights, privileges, or immunities secured by the Constitution and [federal] laws" by a person or entity, including a municipality, acting under the color of state law. 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must show that (1) a defendant acting under color of state law (2) deprived plaintiff of rights secured by the Constitution or federal statutes. Benavidez v. County of San Diego, 993 F.3d 1134, 1144 (9th Cir. 2021).

### II.     Linkage

Section 1983 requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Rizzo v. Goode, 423 U.S. 362, 370-71 (1976). Plaintiff may demonstrate that connection by alleging facts showing: (1) a defendant's "personal involvement in the constitutional deprivation," or (2) that a defendant set "in motion a series of acts by others" or "knowingly refus[ed] to terminate a series of acts by others, which [the defendant] knew or reasonably should have known would cause others to inflict a

constitutional injury." Starr v. Baca, 652 F.3d 1202, 1207-08 (9th Cir. 2011) (quotation marks and citation omitted).

## DISCUSSION

I. **Legal Mail and Access to the Courts**

   A. **Legal Standard**

Under the First Amendment, prisoners have a right to send and receive mail. Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam). However, a prison may adopt regulations or practices for inmate mail which limit a prisoner's First Amendment rights as long as the regulations are "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89, (1987). "When a prison regulation affects outgoing mail as opposed to incoming mail, there must be a 'closer fit between the regulation and the purpose it serves.'" Witherow, 52 F.3d at 265 (quoting Thornburgh v. Abbott, 490 U.S. 401, 412 (1989)).

Courts have also afforded greater protection to legal mail than non-legal mail. See Thornburgh, 490 U.S. at 413. In the Ninth Circuit, prisoners have a "protected First Amendment interest in having properly marked, confidential legal mail opened only in their presence." Hayes v. Idaho Corr. Ctr., 849 F.3d 1204, 1211 (9th Cir. 2017). However, only mail from plaintiff's lawyer or prospective lawyer is protected. See Nordstrom v. Ryan, 762 F.3d 903, 909 (9th Cir. 2014) (describing the right at issue as the right to be free from "prison officials reading mail between a prisoner and his lawyer"); Keenan v. Hall, 83 F.3d 1083, 1094 (9th Cir. 1996) ("mail from the courts, as contrasted with mail from a prisoner's lawyer, is not legal mail"). As to communication with counsel, a plaintiff need not "'show any actual injury beyond the free speech violation itself to state a constitutional claim.'" Hayes, 849 F.3d at 1212 (quoting Al-Amin v. Smith, 511 F.3d 1317, 1333 (11th Cir. 2008)).

A prison's interference with legal mail may also violate an inmate's right of access to the courts which is protected by the First Amendment's right to petition the government and the due process clause of the Fourteenth Amendment. See Snyder v. Nolen, 380 F.3d 279, 290-291 (7th Cir. 2004) (discussing the development of cases concerning a prisoner's right of access to the courts). Prison officials may not actively interfere with an inmate's right to litigate. Silva v.

1  Vittorio, 658 F.3d 1090, 1103 (9th Cir. 2011), overruled on other grounds by Richey v. Dahne,
2  807 F.3d 1202, 1209 n. 6 (9th Cir. 2015).  In order to state a claim for the denial of access to the
3  courts, a plaintiff must allege he suffered an actual injury, which is prejudice with respect to
4  contemplated or existing litigation, such as the inability to meet a filing deadline or present a non-
5  frivolous claim.  Lewis v. Casey, 518 U.S. 343, 349 (1996).

**B.  Analysis**

Despite the TAC's extensive overview of Folsom State Prison's legal mail system and the three times plaintiff received opened and unlogged legal mail, all of plaintiff's potential § 1983 claims related to mail access fail for inadequate linkage.  Plaintiff identifies twenty defendants responsible for the alleged mail interference – Tritt, Recio, Odbert, Nygard, Thompson, Williams, Lee, Zamora, Oldham, and Does 12-22 – but does not allege any facts regarding their personal participation in the incidents.  Nor does the TAC contain any facts from which the undersigned could infer the defendants' personal involvement (e.g., that a particular defendant was responsible for logging mail in plaintiff's housing cell on a given day, etc.).  Accordingly, plaintiff's TAC fails to adequately allege any claims for unconstitutional interference with his legal mail.

Although this is plaintiff's third amended complaint, the undersigned finds it appropriate to grant plaintiff one more chance to amend his legal mail access claim.  See Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) ("A pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.").  The undersigned advised plaintiff in the last screening order that he must name the defendants allegedly responsible for interfering with his legal mail, ECF No. 24 at 4, and now instructs plaintiff that he must specifically identify how each of the named defendants is personally involved.  Arnold v. Int'l Bus. Machines Corp., 637 F.2d 1350, 1355 (9th Cir. 1981).

Plaintiff is further advised that, while the use of Doe defendants is permitted, he must still adequately link them to the alleged violation.  "Whether a defendant is named or has been designated as a 'John Doe,' Plaintiff must tie that defendant's actions to the specific harms alleged to have been caused to Plaintiff." Zepeda v. Sullivan, No. 1:06-cv-1391 AWI GSA PC,

6

2009 WL 1288235, at *3 (E.D. Cal. May 7, 2009). "In his amended complaint, Plaintiff shall either name the defendants involved or list the Doe defendants involved and describe what each did to violate his rights. If Plaintiff can only list these defendants as John Doe, Plaintiff should allege specific acts that each Doe defendant did, such as 'John Doe 1 did X' and 'John Doe 2 and 3 did Y.'" Alexander v. Tilton, 2009 WL 464486, *5 (E.D. Cal. Feb. 24, 2009).

## II. First Amendment Retaliation

### A. Legal Standard

Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. Rhodes v. Robinson, 408 F.3d 559 567-68 (9th Cir. 2005) (citations omitted). Filing an inmate grievance is a protected action under the First Amendment. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

### B. Analysis

The undersigned construes plaintiff's TAC as alleging a First Amendment retaliation against defendant Lt. O'Hagan. But as with plaintiff's last amended complaint, his TAC fails to allege that O'Hagan's actions constituted an adverse action. For example, there are no allegations that O'Hagan threatened plaintiff during the interview or otherwise caused plaintiff harm. Further, plaintiff's speculation that O'Hagan used the grievance interview as an intimidation tactic is not sufficient to establish causation. Wood v. Yordy, 753 F.3d 899, 905 (9th Cir. 2014) ("We have repeatedly held that mere speculation that defendants acted out of retaliation is not sufficient.")

In the same section of the TAC, plaintiff appears to briefly allege that defendant O'Hagan's interview and defendant Johnson's closing memorandum violated his Fourteenth Amendment "procedural due process protections" regarding the regulatory grievance process. (See ECF No. 29 at 5.) However, while prisoners may challenge a disciplinary action which deprives or restrains a state-created liberty interest, Sandin v. Conner, 515 U.S. 472, 483–84

(1995), they do not have a constitutional right to an effective grievance or appeal procedure. See Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding plaintiff's challenge to the processing of his appeals does not violate procedural due process "because inmates lack a separate constitutional entitlement to a specific prison grievance procedure." (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)).

Accordingly, plaintiff has stated neither a First Amendment retaliation nor a Fourteenth Amendment procedural due process claim regarding the irregular processing of his grievance.

### III. Medical Privacy

Plaintiff alleges that defendants unauthorized opening of his mail violated his right to medical privacy under 42 U.S.C. § 1320d, et seq. (ECF No. 29 at 7-8.) These provisions make up the federal Health Insurance Portability and Accountability Act, known as HIPAA. The linkage issues described above aside, plaintiff's claim fails as a matter of law. HIPAA does not authorize private lawsuits. Garmon v. County of Los Angeles, 828 F.3d 837, 847 (9th Cir. 2016) ("HIPAA itself provides no private right of action." (quoting Webb v. Smart Document Solutions, LLC, 499 F.3d 1078, 1081 (9th Cir. 2007))). Courts have generally treated HIPPA's lack of a private right of action as conclusive in determining that HIPPA is not actionable under §1983. See, e.g., Huling v. City of Los Banos, 869 F. Supp. 2d 1139, 1154 (E.D. Cal. 2012). Regardless of whether the absence of a private right of action in a statute necessarily and always precludes a §1983 action to enforce that statute, HIPPA is not enforceable pursuant to §1983. That is because its provisions "entirely lack the sort of 'rights-creating' language critical to showing the requisite congressional intent to create new rights." Gonzaga University v. Doe, 536 U.S. 273, 286 (2002).

Further, prisoners do not have a constitutionally protected expectation of privacy in medical records when the state has a legitimate penological interest in access to them. Seaton v. Mayberg, 610 F.3d 530, 534 (9th Cir. 2010). Plaintiff does not allege the prison had no penological interest in opening mail from CDCR, instead claiming absolute confidentiality under HIPAA. Accordingly, plaintiff has not stated any cognizable claims related to the unauthorized opening of his medical mail.

### IV. Defendant Johnson's Supervisory Liability

Plaintiff's final claim, titled "professional services and neglect," ECF No. 29 at 8-9, essentially asserts defendant Johnson's vicarious liability for the TAC's preceding claims. But as the undersigned has previously advised plaintiff, see ECF No. 15 at 5-6, a supervisor can be held liable in her individual capacity under § 1983 only if (1) she personally participated in the constitutional violation, or (2) there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Starr, 652 F.3d at 1207. There is no respondeat superior liability under § 1983. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted). Accordingly, plaintiff may not proceed on his standalone "professional services and neglect" claim against defendant Johnson.

## LEAVE TO AMEND

Having conducted the screening required by 28 U.S.C. § 1915A, the court finds that the complaint does not state a valid claim for relief pursuant to the First, Fifth, or Fourteenth Amendment. Plaintiff's various § 1983 mail access claims fail for inadequate linkage between defendants and the alleged unauthorized opening of his legal mail. Plaintiff's remaining allegations concerning medical privacy, prison grievance procedures, and the Warden's supervisory failures do not state claims upon which relief can be granted. Because of these defects, the court will not order the complaint to be served on defendants.

As explained above, plaintiff may try to fix the problems with his <u>legal mail access claims only</u> by filing an amended complaint. If plaintiff chooses to file an amended complaint, he must demonstrate how the conditions about which he complains resulted in a deprivation of his constitutional rights. Rizzo v. Goode, 423 U.S. 362, 370-71 (1976). The complaint must also allege in specific terms how each named defendant is involved. Arnold, 637 F.2d at 1355. There can be no liability under § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Id.; Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Furthermore, "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient." Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted).

9

1    Plaintiff is also informed that the court will not refer to a prior pleading in order to make
his amended complaint complete. Local Rule 220 requires that an amended complaint be
complete in itself without reference to any prior pleading. This is because, as a general rule, an
amended complaint supersedes any prior complaints. Loux v. Rhay, 375 F.2d 55, 57 (9th Cir.
1967) (citations omitted). Once plaintiff files an amended complaint, any previous complaint no
longer serves any function in the case. Therefore, in an amended complaint, as in an original
complaint, each claim and the involvement of each defendant must be sufficiently alleged.

## CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's TAC fails to state a claim upon which relief may be granted, see 28 U.S.C. § 1915A, and will not be served.

2. Within thirty days from the date of service of this order, plaintiff may file an amended complaint that complies with the requirements of 42 U.S.C. § 1983, the Federal Rules of Civil Procedure, and the Local Rules of Practice. The amended complaint must bear the docket number assigned this case, **2:23-cv-01263 DC SCR P**, and must be labeled "**Fourth Amended Complaint**."

3. Failure to file an amended complaint in accordance with this order will result in a recommendation that this action be dismissed pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.

4. The Clerk of the Court is directed to send plaintiff a copy of the prisoner complaint form used in this district.

DATED: July 21, 2025

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE